Shauck, J.
In the opinion of counsel for the relators the constitutional validity of the act of April 27, 1902, is not involved in the present inquiry. Their view of the subject is that this act repeals the statutory authority under which the defendants held the office of police commissioners, and that, the relators are therefore the only persons who, under an existing statute, claim to hold the office, and to be entitled to the possession and custody of the property which appertains to it. For two conclusive and independent reasons we regard this view as defective, and the conclusion to which it leads as unsound.
This act, and the sections for whose repeal it provides, relate to the police organization of the city of Toledo. Such organization is not otherwise provided for. Owing to the relation and the subject-matter of the statutes, we cannot suppose that the general assembly would have enacted the section repealing the law under which the defendants claim and hold office, but for the belief that the act under which the relators were to succeed them would be operative. That supposition would impute to the general assembly an intention to leave the city without such organization. That is forbidden by the nature of the subject, and by the universally recognized necessity for such an organization in all the cities of the state. Applying to the case a doctrine with which the law *483 vers of the state are quite familiar, the repealing section of the present act is inoperative unless its provisions for reorganization of the board are valid. The system provided by the former legislation being still in full operation, it should continue, unless, by a valid act, a system to succeed it has been provided.
It also seems quite clear that the title of the relators, and their right to the possession of the property appertaining to the office of police commissioners, depends upon the constitutional validity of the act of April 27,1902. If that act is invalid, the relators are but private citizens, wholly without authority to demand or receive such property, and without authority to make the present relation. Even if the defendants have ceased to hold office as police commissioners, there is no duty enjoined upon them by law to deliver the property in question to persons who are without official rights and duties with respect to it.
The validity of the act is denied because, in the view of counsel for the defendants, it is a special act conferring corporate powers, in violation of the first section of the thirteenth article of the constitution, ordaining that: “The general assembly shall pass no special act conferring corporate powers.” Confessedly, if the act is general, it is not within the inhibition of this section. The act is said to be general and not special, because it provides for “the appointment, regulation, and government of a police force in cities of the third grade of the first class.” That it affects no municipality in the state except Toledo is admitted. But the fact is said to be immaterial, because of the classification of cities by the general assembly, and the doctrine formerly applied by the courts to such classification.
*484 That there has long been classification of the municipalities of the state is true. It is also true that while most of the acts conferring corporate powers upon separate municipalities by a classified description, instead of by name, have been passed without contest as to their validity, such classification Avas reluctantly held by this court to be permissible. But attention to the original classification, and to the doctrine upon Avhich it was sustained, must lead to the conclusion that the doctrine does not sustain the classification involved in the present case, and in State ex rel. v. Beacom et al., presently to be decided. Originally, all the municipal corporations of the state were comprehended Avithin the following classification: “Cities of the first, and cities of the second class; incorporated villages, and incorporated villages for special purposes.” The basis of the classification was unqualifiedly fixed by the statute which provided that all cities which then had, or might thereafter have, a population exceeding twenty thousand, should be cities of the first class; and, by like terms, municipalities having, or attaining to, a population of more than five thousand, but not exceeding twenty thousand, should be cities of the second class. By an unvarying rule the characteristic of population was made the basis of the classification, and it was made inevitable that every city attaining a population of twenty thousand should advance, ánd become a city of the first class; and, that every village attaining a population of five thousand should become a city of the second class. Against the validity of acts conferring corporate powers by such classification, it was urged that the validity of an act must be determined by its practical operation, and not by its form; and, that such acts, though general *485 in form, were special in operation. The answer to that objection stated the sum of the judicial doctrine of_„ classification.- One may state that answer as strongly as his abilities will permit, without giving it his approval. The answer was that the classification was to be permanent since it was to be presumed that the general assembly intended obedience to the constitution, that the requirement of- the constitution was not that an act granting corporate power should immediately operate in all cities, but that there was a sufficient compliance in the provisions of the statute for the imperative advancement of every municipality when it should have the prescribed characteristic of population, and thus every municipality of the class described in the statute by which power was conferred, or of a lower class, might come within its operation. Two things were true and they were of the essence of the doctrine. Advancement was by a rule of unvarying application, and every municipality might become subject to the operation of every statute conferring corporate power upon its own or a higher class.
The number of classes into which successive acts have since divided the municipalities of the state to make them recipients of corporate power cannot be ascertained upon any inquiry that is practicable. Sections 1546 to 1552 of the Revised Statutes, relate exclusively to the subject of classification. The first of these sections now provides that cities of the first class shall be of three grades, and cities of the second class shall be-of eight grades. In the present view grades of classes are but added classes. In these eleven classes the eleven principal cities of the state are isolated, so that an act conferring corporate power upon one of them by classified description, confers *486 it upon no other. They have been isolated under the guise of classification, as their growth promised realization of the belief which was the foundation of the judicial doctrine of classification, viz.: that their advancement under the unvarying rule of population, would give a wider operation to acts conferring corporate powers. An impediment to the more general operation of laws conferring corporate powers on cities of the first class is found in section 1546: “Cities of the second class, which hereafter become cities of the first class, shall constitute the fourth grade of the latter class.” We are not aware that there is now in the state a city of the fourth grade of the first class, but the class is provided to the end that it may receive any city of the second class which may be advanced, and that such city may thus be excepted from the operation of these acts relating to Cleveland and Toledo, which are, respectively, cities of the second and third grade, of the first class. The judicial doctrine of classification was, that all the cities having the same characteristic of a substantial equality of population, should have the same corporate power, although another class might be formed upon a substantial difference in population. The classification now provided affords no reason for the belief that it is based upon such substantial difference in population as the judicial doctrine contemplated. When the original classification, and the numerous reclassifications were made, Cincinnati was the most populous city in the state. Cleveland now exceeds it in population, but corporate powers continue to be conferred by the former description. Is it believed that a doctrine which recognized the validity of législation applying only to the city of Cleveland because it was substantially below Cincinnati in population, *487 requires us to hold that similar legislation is now valid because it has the larger population? Furthermore, the increasingly numerous classes of municipalities show that even when a difference in population is made to appear as the basis- of classification, the differences in population are so trivial that they cannot be regarded as the real basis. We have been required, from time to time, to examine many of the acts to confer corporate powers upon the isolated cities composing the eleven classes referred to, and others containing special classifications, and still others have been examined in the present inquiry. In view of the trivial differences in population, and of the nature of the powers conferred, it appears from such examination, that the present classification cannot be regarded as based upon differences in population, or upon any other real or supposed differences in local .requirements. Its real basis is found in the differing views or interests of those who promote legislation for the different municipalities of the state. An intention to do that which would be violative of the organic law should not be imputed upon mere suspicion. But the body of legislation relating to this subject shows the legislative intent to substitute isolation for classification, so that all the municipalities of the state which are large enough to attract attention shall be denied the protection intended to be afforded by this section of the constitution. The provisions of the section could not be more clear or imperative, and relief from the present confusion of municipal acts and the burdens which they impose would not be afforded by its amendment. Since we cannot admit that legislative power is in its nature illimitable, we must conclude that this provision of the paramount law annuls *488 the acts relating to Cleveland and Toledo, if they confer corporate power.
Counsel for the relators, in support of the act relating to Toledo, urge the conclusion that even though the act should be regarded as special, it is not repugnant to this section of the constitution because, in their view, it does not confer corporate powers. The observations relating to this subject in Cincinnati v. Parker et al., ante., are pertinent, but they need not be repeated here. It is no longer doubted that the corporate powers contemplated by this section are those conferred upon municipalities, as well as those conferred upon private or commercial corporations. Though it might be difficult to give a conceptual definition of corporate powers which would be found complete and accurate in all cases, an accurate descriptive definition readily occurs, and it is sufficient for present purposes. They are such poAvers as are usually conferred upon corporations. In the present aspect of the subject they are such powers as are usually conferred upon municipal'corporations. They are classified by Judge Dillon as follows:
“If we analyze the complex powers usually conferred upon a municipality in this country we shall discover that these are of two general classes, viz.: 1. Those which relate to health, good government, éfficient police, etc., in Avhieli all the inhabitants have an equal interest and ought to haAre an equal voice. 2. Those which directly involve the expenditure of money, and especially those relating to local improvements the expense of which ultimately falls upon the property owners.”
Surely we shall not err if we regard the phrase “'corporate powers,” as embracing all the powers which, within the observation of those who framed *489 and adopted the constitution, were conferred upon and exercised by all the cities of the state. Of these powers perhaps none is more conspicuously exercised than that of maintaining the public order and enforcing municipal ordinances.
. It is also quite obvious that this act contemplates a large increase in the expense of maintaining the police department of Toledo, and that expense must be paid with money raised by the exercise of the municipal power of taxation. That is a corporate power. Cincinnati v. Parker et al., ante. In this connection it is interesting to observe the relation of this section of the constitution to Sec. 26, of Art. 2, which provides that: “All laws of a general nature, shall have uniform operation throughout the state.” It is within the knowledge common to all whose attention has been directed to the subject, that one of the most prominent of the purposes leading to the adoption of the present constitution was to relieve the people of the evils of special legislation, legislation which was enacted by the votes of representatives who were indifferent to the subject, because the legislation did not affect their constituencies. This is clearly shown by the debates in the constitutional convention, by the public history of those times, ¿nd by repeated judicial expositions of the subject. Conclusive evidence of the evil is preserved in the volumes which contain the acts of the legislature at its sessions held shortly before the adoption of the present constitution. That these important changes have been made in the organic law would not be suggested by a comparison of the bulk and contents of those volumes with the bulk and contents of those which are again appearing. These sections were admirably adapted to accomplish the purpose in view, for in their combined scope they *490 seemed to comprehend the entire field in which special legislation had been enacted. Every consideration suggested, for regarding the act under consideration as being without the first section of article 13, tends to the conclusion that it is within the 26th section of article 2. The reliance for the realization of the benefits contemplated by those provisions of the constitution was, first, upon the dutiful obedience of the general assembly to their requirement; and, second, upon the well established duty of the courts to adjudge all legislation in violation of constitutional limitations to be void. There is no other relief.
Counsel for the defendants further insist that the act is violative of the principles of local self-government, recognized in The State ex rel. v. Commissioners, 54 Ohio St., 333, particularly stated in the opinion of Minshall, J., in that case, and Cooley’s Constitutional Limitations, 47; 24 Mich., 44; and of the 6th section of the 13th article of the constitution. These questions are passed without consideration, the propositions believed to have been already established being sufficient to determine the case.

Demurrer sustained, and petition dismissed.

Burket, Spear, Davis and Price, JJ., concur.